UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAPTAIN SHAUN B. JONES,<br>Moveant | * | |
| | * | |
| v. | * | |
| | * | CIVIL ACTION No. 1:05MS00327 JGP |
| | * | |
| NAVAL CRIMINAL INVESTIGATIVE<br>SERVICE, | * | ECF |
| | * | |
| Defendant | * | |

\* \* \*

**RESPONSE IN OPPOSITION TO THE MOTION TO QUASH**

**INTRODUCTION**

Captain Shaun B. Jones, U.S. Navy, ("plaintiff") brings the instant action to quash certain subpoenas issued by the Department of Defense Office of Inspector General to certain financial institutions where he holds accounts pursuant to the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3410. The Federal defendants will herein show that such a motion should not be granted. First, the notice of subpoena was properly served upon the plaintiff according the requirements of the RFPA. Second, the plaintiff was properly put on notice as to the specific nature of the purpose of the subpoenas and that such subpoenas were in support of a legitimate law enforcement inquiry.

**STATEMENT OF FACTS**

The plaintiff is an active duty Naval officer currently stationed at the National Reconnaissance Office (NRO), Washington, D.C. In January 2005, the plaintiff was put on notice that he was being investigated for financial conflicts of interests between his military

**RECEIVED**

AUG 1 8 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

duties and certain civilian companies for which he consulted and from which he received compensation. Two separate entities maintain open investigations into plaintiff's activities: the NRO Office of Inspector General (IG) and the Naval Criminal Investigative Service. On January 6, 2005, Mr. F. Whitten Peters, an attorney with Williams & Connelly LLP, contacted the NRO Office of Inspector General and informed that office that his firm represented Captain Jones concerning its investigation. On January 13, 2005, the NRO IG responded to Mr. Peters stating that their office does not reveal whether a person is subject of an investigation. See Exhibit 1, Declaration of Special Agent Marten Williams.

Between May 13, 2005, and the present, the Naval Criminal Investigative Service (NCIS) and Navy criminal prosecutors have worked with Captain Jones and his attorneys in an effort to obtain financial documents necessary to the investigations. Id.; See Exhibit 2, Declaration of Lieutenant Colin Kisor, JAGC, U.S. Navy. From the outset of their investigation, NCIS and the prosecutors disclosed the subject matter of the investigation – financial conflicts of interest in violation of 18 U.S.C. § 208, and unauthorized absences in violation of Article 86 of the Code of Military Justice – to he plaintiff and his attorneys. Id.

In June 2005, the plaintiff, through his attorneys, notified the Navy prosecutors and NCIS that further documentation to support the investigation would not be forthcoming. Id. At that time, NCIS began coordinating with the Department of Defense Office of Inspector General (DoD IG) to obtain subpoenas for Captain Jones' financial institution records pursuant to 12 U.S.C. § 3405. Near the end of July 2005, the plaintiff and his attorneys continued a degree of cooperation in the ongoing investigations and delivered some 754 pages of documents to NCIS. Id. In addition, the plaintiff's attorneys continued an on-going dialogue with the Navy prosecutors about the investigation in an attempt to have the matter closed.  See Exhibit 2,

Declaration of Lieutenant Colin Kisor, JAGC, U.S. Navy. However, the plaintiff did not provide all the financial records sought by NCIS. See Exhibit 1, Declaration of Special Agent Marten Williams. In addition, plaintiff declined to provide voluntary waivers for the Navy to obtain such documents from his financial institutions pursuant to 12 U.S.C. § 3404. See Exhibit 2, Declaration of Lieutenant Colin Kisor, JAGC, U.S. Navy. Therefore, NCIS requested that the DoD IG provide subpoenas for such financial records after providing a detailed interrogatory as to why such information was needed in support of the on-going investigations into Captain Jones' conduct. Id.

In early August 2005, the Navy prosecutors informed NCIS that Captain Jones and his attorneys would no longer cooperate. Id. Thereafter, on August 15, 2005, Special Agent C. R. Baldwin, III, sent a notice to Captain Jones through his attorney representation that subpoenas would be served on certain of his financial institutions on or about August 19, 2005. Id. Pursuant to the provisions of 12 U.S.C. § 3410, plaintiff now brings this motion to quash the subpoenas. NCIS has not served the subpoenas on any financial institutions and when it does, it intends to wait the 10 day waiting period and insure that all compliance requirements of 12 U.S.C. §§ 3403(b) and 3405 are met before obtaining any of Captain Jones' financial records. See Exhibit 1, Declaration of Special Agent Marten Williams.

## ARGUMENT

**A. NCIS HAS PROVIDED THE REQUIRED NOTICE OF SUBPOENAS IN A TIMELY MANNER ACCORDING TO THE LAW**

The Government may seek to obtain financial records from institutions through the use of administrative subpoenas only if "(1) it has reason to believe the records are relevant to a

3

legitimate law enforcement inquiry; and (2) it serves notice on the customer on or before the date of the service of the subpoena." Botero-Zea v. United States, 915 F. Supp. 614, 617 (1996). The plaintiff argues that NCIS has issued its notice of subpoenas in an "untimely manner in contravention of the express terms of the governing statute." Pl. Motion, p. 1. However, NCIS has properly followed the requirements of 12 U.S.C. § 3405. That statute authorizes the Government to "obtain financial records...pursuant to an administrative subpoena" if three conditions are met. Id. (emphasis added). Two of the conditions have timing requirements. First, NCIS must provide a notice and copy of the subpoenas before such subpoenas are served upon the financial institutions. 12 U.S.C. §3405(2). Here, NCIS provided notice to the plaintiff through his attorney that such subpoenas were to be served on Captain Jones' financial institutions. This timing requirement was met because notice was received before service of the subpoenas – which still have not been served. See Exhibit 1, Declaration of Special Agent Marten Williams. As stated in Botero-Zea, the notice only has to be served on "the customer on or before the date of service of the subpoena." Botero-Zea v. United States, 915 F. Supp. at 617. In one case, a District allowed the notice to the customer and the subpoenas to the financial institutions to occur on the same day. Pennington v. Donovan, 574 F. Supp. 708, 710 (S.D. Tex. 1983). Thus, NCIS has met this requirement.

As to the second timing requirement, NCIS cannot "obtain financial records" until "ten days have expired from the date of service of the notice or fourteen days have expired from the date of the mailing." 12 U.S.C. §3405, first sentence and (2). The statute does not require NCIS to hold the subpoenas in abeyance until the time period has passed - it only requires them not to obtain such financial documents. NCIS would have to declare to the financial institution that

such time period had elapsed before taking custody of such documents. 12 U.S.C. § 3403(b); Botero-Zea v. United States, 915 F. Supp. at 619. NCIS intended – indeed, still intends – to follow this precise course of action to insure that the law was correctly followed. See Exhibit 1, Declaration of Special Agent Marten Williams. Although NCIS may not be able to "obtain" such documents, financial institutions are not restricted from beginning the process of collecting such documents responsive to the subpoena, so that when the time period does elapse, NCIS can promptly take custody of the documents and continue its criminal investigation. See 12 U.S.C. § 3403(c); See also Exhibit 1, Declaration of Special Agent Marten Williams.

Therefore, the notice of the subpoenas was timely, NCIS followed the law, and the plaintiff's motion to quash should be denied.

**B.    THE PLAINTIFF WAS PROVIDED APPROPRIATE NOTICE AS TO THE NATURE OF THE LAW ENFORCEMENT INQUIRY AND THE RELEVANCY OF THE FINANCIAL DOCUMENTS TO THIS INQUIRY.**

NCIS can only obtain documents that are relevant to a legitimate law enforcement inquiry. 12 U.S.C. § 3405(1). This requirement is separate from NCIS' requirement to provide the plaintiff "reasonable specificity" as to the nature of the law enforcement inquiry. 12 U.S.C. § 3405(2). These are two separate requirements and NCIS has met both of them.

First, the records sought must be relevant to a legitimate law enforcement inquiry. Id. The plaintiff does not dispute that such a legitimate law enforcement inquiry exists. In fact, plaintiff and his counsel have been on notice since January 2005 that plaintiff was being investigated for possible financial conflicts of interest between his military duties and outside civilian contractors. See Exhibit 1, Declaration of Special Agent Marten Williams; See Exhibit 2, Declaration of Lieutenant Colin Kisor, JAGC, U.S. Navy. Before the DoD IG issued the

subpoena, NCIS provided an in-depth interrogatory in support of the subpoenas' issuance. See Exhibit 1, Declaration of Special Agent Marten Williams. Since the DoD IG issued the subpoenas, NCIS must have met its burden of showing that a legitimate law enforcement inquiry was on-going and that such financial documents were necessary for the completion of this inquiry. The plaintiff does not challenge the DoD IG's determination that legitimate law enforcement inquiry was and is on-going. In any event, the DoD IG determination would be outside the scope of this Court's authority to evaluate under current case law requiring the Court to abstain from interfering in internal military decisions and allowing the military justice system to run its course. See Schlesinger v. Councilman, 420 U.S. 738 (1975); Parker v. Levy, 417 U.S. 733, 743-44 (1974); Chappell v. Wallace, 462 U.S. 296, 301 (1983); Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971). Thus, since the plaintiff did not object to the DoD IG's determination that such subpoenas were necessary in support of an internal military criminal investigation and would be barred from such Court's review under the independent abstention doctrine, it is clear that NCIS has met its burden to an independent, neutral evaluator (i.e. the DoD IG), that the records sought are relevant to a legitimate law enforcement inquiry. Therefore, NCIS has met its burden under 12 U.S.C. § 3405(1) and thus, plaintiff has failed to properly assert a reason to quash the subpoenas under that provision.

  Second, NCIS is required to provide "notice which state with reasonable specificity the nature of the law enforcement inquiry." 12 U.S.C. § 3405(2) (emphasis added). Here, NCIS stated in its notice that the purpose of the subpoenas was "to review financial records relating to [plaintiff's] consulting services." Pl. Motion, Exhibit 1. Under the circumstances, this provided the plaintiff with sufficient information to understand and appreciate the nature of the law

enforcement inquiry. As stated, the plaintiff has been under investigation since at least January 2005. See Exhibit 1, Declaration of Special Agent Marten Williams. During this eight month period, the plaintiff's attorneys have constantly been in contact with NCIS, NRO IG, and Navy prosecutors about the substance of the investigation, the alleged criminal conduct, and what type of financial documents were necessary to complete the investigation. Id.; See Exhibit 2, Declaration of Lieutenant Colin Kisor, JAGC, U.S. Navy. In fact, the plaintiff, through his attorneys, has provided NCIS over 750 pages of selective financial documents. Id. However, in the opinion of the NCIS, the plaintiff continues to withhold the necessary documents that are relevant to its investigation of the plaintiff's possible financial conflicts of interest. Id. Thus, based on continuous and on-going correspondence between plaintiff's attorneys and the Navy investigation team, the purpose listed in the notice provided the "nature of the law enforcement inquiry" – i.e. financial records dealing with an outside, civilian consulting service – with reasonable specificity.

    The plaintiff argues that NCIS' specificity was lacking. However, NCIS specifically stated what type of transactions into which it was inquiring – i.e., financial records dealing with an outside, civilian consulting service. This was not an unnecessary intrusion, but rather a specific search dealing with specific transactions for which there may be possible criminal misconduct in violation of 18 U.S.C. § 208 and unauthorized absences in violation of Article 86 of the Uniform Code of Military Justice. There is no requirement that NCIS provide the plaintiff a detailed analysis of its on-going investigation. However, as stated, the Navy investigative team has been investigating plaintiff since January 2005. During this period of time, plaintiff has retained counsel and engaged the Navy about its investigation. The Southern District Court of

Texas found the fact a plaintiff had previous knowledge of the investigation a compelling reason in determining that a simple specificity description in the notice was appropriate. <u>Ruggles v. United States Securities and Exchange Commission</u>, 567 F. Supp. 766, 767 (S.D. Tex. 1983); <u>See also</u> <u>Pennington v. Donovan</u>, 574 F. Supp. 708, 710 (S.D. Tex. 1983). Therefore, plaintiff and his attorneys were properly put on notice and know exactly why the Navy seeks access to plaintiff's financial records – to determine whether a conflict of interest exists in plaintiff's outside consulting activities.

## CONCLUSION

The plaintiff's motion to quash the subpoenas should be dismissed since NCIS and the Navy properly met the requirements of 12 U.S.C. § 3405. Finally, attorneys fees are inappropriate in this case since the plaintiff has failed to show how he meets the criteria required to be met before such an award is given.

Dated: August 18, 2005

Respectfully Submitted,

_/s/_
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

_/s/_
R. CRAIG LAWRENCE, D.C. BAR #171538
Assistant United States Attorney

8

/s/
_____
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 307-0406

Attorneys for Defendant

OF COUNSEL:
BRETT JOHNSON
Lieutenant, JAGC, U.S. Navy
Office of the Judge Advocate General
General Litigation Division
Department of the Navy
Washington Navy Yard, Washington, DC
Telephone: (202) 685 - 4592

## Certificate of Service

I, John C. Truong, hereby certify that I hand-delivered a copy of the foregoing document to Movant's counsel in Court today, August 18, 2005.

JOHN C. TRUONG

9