IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPTAIN SHAUN B. JONES,   *

   Moveant   *

                                  CIVIL ACTION No. 1:05MS00327

   v.   *

NAVAL CRIMINAL INVESTIGATIVE,
SERVICE,   *
   Defendant
                         *   *   *

### DECLARATION OF MARTEN L. WILLIAMS

    DECLARANT, states as follows, to wit:

1. I am MARTEN L. WILLIAMS, presently serving as an special agent with the Naval Criminal Investigative Service, Washington Navy Yard, Department of the Navy, 1014 N Street, SE., Room 102, Washington Navy Yard, DC, 20374. I have served in this position since October 2004. I have been a special agent with NCIS since January 2000 and have been a criminal investigator with the federal government since 1990.

2. On January 6, 2005, I was contacted by the National Reconnaissance Office of Inspector General (IG) concerning Captain Shaun B. Jones, U.S. Navy. That office was concerned that Captain Jones was engaged in financial conflict of interests between his military duties and certain outside civilian activities that may have risen to a criminal level. This concern arose from an on-going IG investigation. On January 7, 2005, I opened a criminal investigation into the activities of Captain Jones and his financial relationship with these outside entities.

3. On January 6, 2005, Mr. F. Whitten Peters, an attorney with Williams & Connelly LLP, contacted the NRO IG and informed that office that his firm represented Captain Jones concerning its inquiry. On January 13, 2005, the NRO IG responded to Mr. Peters stating that their office does not reveal whether a person is subject of an investigation. See Attachment A, NRO IG Letter dated January 13, 2005.

4. On May 13, 2005, I contacted Mr. Peters concerning my investigation and left a message informing him what type of financial records I needed to complete my investigation. Thereafter, Mr. Peters returned my call and stated that he had the documents I needed for my investigation. We talked for approximately one half hour. During that conversation, we discussed what documents I was looking for, including income tax returns, real estate financing documents, and bank records. We also discussed certain aspects of the investigation, including that I was investigating Captain Jones concerning certain financial conflict of interests and possible unauthorized absences from his work site.

5. On May 23, 2005, Mr. Peters contacted me and informed me that he had the documents I had requested. I met Mr. Peters at 1400 on that date at his law offices, 725 12th Street NW, Washington, D.C. and we continued to discuss the case, including that I was trying to determine Captain Jones' sources of income. Mr. Greg Bowman was also present during this meeting. This meeting lasted less than one half hour. During the meeting, in addition to discussing aspects of my investigation and why Captain Jones was a suspect of such investigation, Mr. Peters also provided 72 pages of partially responsive documents. Mr. Peters did not provide any bank records.

6. Between May 23, 2005, and June 3, 2005, Mr. Peters and I exchanged e-mails about the status of my investigation. See Attachment B, E-mail Chain with Mr. Peters. On June 3, 2005, Mr. Peters sent to me via facsimile a 2004 income tax return. Mr. Peters was aware that my investigation focused on possible financial supplementations of Captain Jones' military income by unauthorized outside sources. Thus, I was working with Mr. Peters in an attempt to clarify any of Captain Jones' outside sources of income.

7. On June 14, 2005, I began working with Navy prosecutors at the Department of the Navy, Trial Service Office Northeast in regard to this investigation.

8. On June 22, 2005, Mr. Peters contacted me and stated that further documentation would not be forthcoming because Captain Jones' was in the State of Florida tending to his ailing mother.

9. In the beginning of July 2005, I began preparing documentation for the Department of Defense Office of Inspector General concerning subpoenas for Captain Jones' bank records. During this period, I was informed that the Navy prosecutors were working with Mr. Peters' about obtaining waivers from Captain Jones to access his bank records.

10. On July 13, 2005, I sent the final request for the subpoenas to the Department of Defense Office of Inspector General. In this request, I attached a four-page interrogatory laying out exactly why the subpoena was necessary – specifically that Captain Jones was being investigated for possible violations of 18 USC 208 and Article 86 of the Uniform Code of Military Justice.

11. On or about July 26, 2005, the Department of Defense Office of Inspector General provided the necessary subpoenas for Captain Jones' bank records. However, on or about July 21, 2005, Captain Jones and his attorneys began providing large batches of documents, eventually totaling around 754 pages of documents, to the Navy. I did not send out the notice of subpoena on that date because it appeared that Captain Jones was complying with our requests.

12. After reviewing the documents, it appeared that Captain Jones still was not providing the necessary bank records voluntarily. In addition, the Navy prosecutors informed me that Captain Jones was no longer going to provide relevant documentation to the investigation. On August 15, 2005, Special Agent C. R. Baldwin issued the Privacy Act of 1978 Notification to Captain Jones through his attorneys that we intended to serve subpoenas on certain financial institutions where Captain Jones holds accounts.

13. I have not served the subpoenas on any financial institution holding an account of Captain Jones. I did not intend to obtain any of Captain Jones' financial records until the 10-day waiting period had elapsed as required by 12 U.S.C. § 3405.

14. In the letter dated August 15, 2005, giving Captain Jones notice of the subpoenas, we informed Captain Jones that we sought the financial records for the purpose of "reviewing financial records relating to consulting services." This was exactly the purpose for which we sought the documents. Captain Jones and his attorneys have been on notice since January 2005 of an on-going criminal investigation into Captain Jones' non-military consulting services and other sources of income that may violate federal statute and the Uniform Code of Military Justice. As stated herein, Captain Jones and his attorneys knew specifically the reasons why such financial statements were necessary and had provided some, but not all, documents that were responsive to the Navy's investigation. Therefore, Captain Jones was well aware of our need for such documentation to determine whether criminal conduct had or had not occurred.

Pursuant to 28 U.S.C. § 1746(2), I declare under the penalty of perjury that the foregoing is true and correct. Executed this 17Th Day of August, 2005 in Washington, D.C.

17 Aug 05
Date:

MARTEN L. WILLIAMS
Special Agent
Naval Criminal Investigative Service